## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JAMES THOMAS STIMPSON,     )
                       )
      Petitioner,        )
                       )
v.                      )   Case No.: 4:19-cv-02050-MHH-
                       )   HNJ
WARDEN DEBORAH TONEY,    )
                       )
      Respondent.      )

## MEMORANDUM OPINION

The magistrate judge entered a report on December 28, 2020, recommending that the Court dismiss James Thomas Stimpson's petition for a writ of habeas corpus as untimely pursuant to 28 U.S.C. § 2244(d)(1)(A). (Doc. 13). The magistrate judge also recommended that the Court deny Mr. Stimpson's motion to amend the petition as moot. (Doc. 13). On March 9, 2021, Stimpson filed objections to the report and recommendation. (Doc. 21).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider *de novo* any objection to the magistrate judge's recommendation."). A district court's obligation to "'make a de novo *determination*

1

of those portions of the report or specified proposed findings or recommendations to which objection is made,'" 447 U.S. at 673 (quoting 28 U.S.C. § 636(b)(1)), requires a district judge to "'give *fresh consideration* to those issues to which specific objection has been made by a party,'" 447 U.S. at 675 (quoting House Report No. 94-1609, p. 3 (1976)). *United States v. Raddatz*, 447 U.S. 667 (1980) (emphasis in *Raddatz*).

Here, the magistrate judge found that Mr. Stimpson's one-year period to file his petition for habeas relief expired on May 8, 2017, and Mr. Stimpson did not file his habeas petition until December 18, 2019, making his petition untimely. (Doc. 1; Doc. 13, p. 11). In his objections, Mr. Stimpson does not challenge the one-year calculation. Instead, he challenges the magistrate judge's analysis of equitable tolling based on extraordinary circumstances or actual innocence.

With respect to extraordinary circumstances that would toll the one-year statute of limitations, Mr. Stimpson reasserts his contention that in January 2017, he discovered the victim's medical records which showed she was shot with a .25 caliber handgun, not a .38 caliber revolver, as the State alleged. (Doc. 21, pp. 7-8). For purposes of this opinion, the Court accepts Mr. Stimpson's argument that January 2017 should trigger the one-year period for filing his petition. But if Mr. Stimpson's one-year period for filing his petition began in January 2017, then his petition was due in January 2018 because his third and fourth Rule 32 petitions were

not properly filed and did not toll the limitation period.  (Doc. 13, pp. 10-11).[1] Because Mr. Stimpson did not file this habeas action until December 2019, his claim is untimely.

Mr. Stimpson also argues that his defense attorney's ineffective assistance hindered his ability to properly raise his federal habeas claims, so he is entitled to equitable tolling under *Martinez v. Ryan*, 566 U.S. 1 (2012).  (Doc. 21, p. 10). *Martinez* does not apply here. In *Martinez*, the Supreme Court held that the ineffective assistance of counsel in state post-conviction proceedings may serve as cause to excuse the procedural default of an ineffective assistance of trial counsel claim that was not properly exhausted in state court.  *Martinez*, 566 U.S. at 9.  The Eleventh Circuit has held that *Martinez* does not provide a basis for equitable tolling of the statute of limitations, a concept that is different from procedural exhaustion. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Because Arthur's § 2254 petition was denied due to his complete failure to timely file that § 2254 petition, the Supreme Court's analysis in *Martinez*  . . . of when and how cause might excuse noncompliance with a state procedural rule is wholly inapplicable here.") (quotation marks omitted); *Chavez v. Sec'y Dep't of Corr.*, 742 F.3d 940, 946 (11th Cir. 2014)

---

[1] As the magistrate judge found, Mr. Stimpson's third Rule 32 motion, filed in April 2017, was not properly filed, so that motion did not toll the one-year period for filing his federal habeas petition. Mr. Stimpson's March 2018 Rule 32 motion could not toll his one-year period for filing his federal habeas petition because the one-year period already had expired in January 2018, using Mr. Stimpson's start date of January 2017.  (Doc. 13, pp. 10-11).

("reject[ing] the notion that anything in *Martinez* provides a basis for equitably tolling the filing deadline")).  The Eleventh Circuit explained:

> [T]he *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period.  The § 2254 ineffective-trial-counsel claims in *Martinez* and *Trevino* were not barred by AEDPA's one-year limitations period.  Instead, those § 2254 claims were dismissed under the doctrine of procedural default because the petitioners never timely or properly raised them in the state courts under the states' procedural rules.  At no point in *Martinez* or *Trevino* did the Supreme Court mention the "statute of limitations," AEDPA's limitations period, or tolling in any way.

*Arthur*, 739 F.3d at 630.  Thus, *Martinez* does not support Mr. Stimpson's effort to toll the statute of limitations for his federal habeas petition.

With respect to actual innocence, Mr. Stimpson argues that he is actually innocent of criminal solicitation to commit murder because the victim's medical records and the amended ballistics report demonstrate that the victim was not shot with the type of gun the shooter testified that Mr. Stimpson gave him.  (Doc. 21). Proof of actual innocence allows a habeas petitioner to overcome an expired statute of limitations.  *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  "'A petitioner does not meet the threshold requirement'" for proof of actual innocence unless he establishes "'that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995) (alteration adopted)).

Even if the Court accepts Mr. Stimpson's argument concerning the medical and amended ballistics evidence, there was enough other evidence of criminal solicitation to murder Loretta Gilbert at Mr. Stimpson's state court trial to support a conviction under Alabama law such that Mr. Stimpson cannot demonstrate that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."   The opinion from the Alabama Court of Criminal Appeals on Mr. Stimpson's direct appeal of his conviction explains the charge against Mr. Stimpson and the evidence that supports his conviction.   The Court of Criminal Appeals stated:

> Alabama's criminal solicitation statute provides that "[a] person is guilty of criminal solicitation if, with the intent that another person engage in conduct constituting a crime, he solicits, requests, commands or importunes such other person to engage in such conduct." § 13A-4-1(a), Ala. Code 1975. Furthermore, the statute provides that "[a] person may not be convicted of criminal solicitation upon the uncorroborated testimony of the person allegedly solicited, and there must be proof of circumstances corroborating both the solicitation and the defendant's intent." § 13A-4-1(a), Ala. Code 1975. This Court has construed the corroboration requirements in the solicitation statute to be the same as the corroboration requirement in § 12-21-222, Ala. Code 1975, which provides that a person cannot be convicted of a felony based on the uncorroborated testimony of an accomplice. In Kimbrough v. State, 544 So. 2d 177, 181 (Ala. Crim. App. 1989), we held:
>
> > In construing the corroboration requirements of our solicitation statute, § 13A-4-1(a), in conjunction with the requirements of our accomplice witness statute, § 12-21-222, we hold that there must be evidence other than the testimony of the solicitee linking the defendant with the offense at two separate stages. The evidence must be corroborative of both the solicitation itself and the solicitor's intent that the other person criminally act on the

5

solicitation. The requirements of the accomplice witness statute are the same, except that in the case of the solicitation statute, an additional safeguard has been provided, i.e., the corroboration must go to both the solicitation and the intent. The requirement that there be proof of circumstances corroborating both elements of the offense of solicitation does not mean that a different standard of corroboration from that required by the accomplice witness statute is required. It simply re-emphasizes the need for additional safeguard due to the nature of the crime itself. The additional safeguard is no more than that both the solicitation and the intent must be corroborated.

. . .

In Kimbrough, this Court also discussed the sufficiency requirements for corroborative evidence in solicitation cases in the context of accomplice-witness corroboration:

The method employed to determine whether evidence is sufficient to corroborate the testimony of an accomplice was set forth in Lynn v. State, 477 So. 2d 1365, 1369 (Ala. Cr. App. 1984), rev'd on other grounds, 477 So. 2d 1385 (Ala. 1985), as follows: "The procedure commonly employed for determining whether sufficient evidence exists to corroborate the testimony of an accomplice ... consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense. Miller v. State, 290 Ala. 248, 275 So. 2d 675 (1973); Ware v. State, 409 So. 2d 886 (Ala. Crim. App. 1981) (emphasis supplied). The necessary quantum of corroborative evidence in such a case was addressed most recently in Scott v. State, 460 So. 2d 1364 (Ala. Crim. App. 1983), reversed on other grounds, Ex parte Scott, 460 So. 2d 1371 (Ala. 1984) . In Scott, the Alabama Supreme Court stated that the 'corroborative evidence does not have to be very strong, or even sufficient to support a

6

conviction, but merely must tend to link the accused with the offense," citing <u>Miller v. State</u>, <u>supra</u> (emphasis supplied). Our controlling authorities have consistently held that corroborative proof need merely tend to connect the defendant with the commission of the offense. [Citations omitted.]

'Sufficient corroboration of accomplices' testimony may be furnished by tacit admission by the accused, by the suspicious conduct of the accused, and by the association of the accused with the accomplice.' <u>Bates v. State</u>, 461 So. 2d 1, 4 (Ala. Cr. App. 1983), aff'd, 461 So. 2d 5 (Ala. 1984). 'Corroborate means to strengthen, to make stronger, to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony' <u>Malachi v. State</u>, 89 Ala. 134, 140-141, 8 So. 104, 106 (1889).

<u>Kimbrough</u>, 544 So. 2d at 181.

. . .

"The tendency of the corroborative evidence to connect [the] accused with the crime, or with the commission thereof, must be independent, and without the aid of any testimony of the accomplice; the corroborative evidence may not depend for its weight and probative value on the testimony of the accomplice, and it is insufficient if it tends to connect [the] accused with the offense only when given direction or interpreted by, and read in conjunction with the testimony of the accomplice." 23 C.J.S. C r i m i n a l L a w, S e c t i o n 812(5)(b).

[E]vidence which merely raises a conjecture, surmise, speculation, or suspicion that [the] accused is the guilty person is not sufficiently corroborative of the testimony of an accomplice to warrant a conviction.' 23 C.J.S. Criminal Law, Section 812(5)(b). <u>Staton v. State</u>, 397 So. 2d 227, 232 (Ala. Crim. App. 1981).

Ex parte McCullough, 21 So. 3d 758, 761-62 (Ala. 2009). Therefore, we must eliminate [the shooter's] testimony and examine the remainder of the evidence to determine if it tends to connect Stimpson with both the act of solicitation and Stimpson's intent that the murder be carried out. For the reasons that follow, we find that it does.

As noted above, Loretta and Ricky Gilbert were, at the time of the shooting, going through divorce proceedings in which substantial assets were at stake. Loretta Gilbert [the victim] testified that her husband and Stimpson were friends; that they frequently ate breakfast together; and that they rode motorcycles together on several occasions.

Todd Graves testified that he had previously worked for Stimpson and has known him for most of his life. Graves testified that he had a conversation with Stimpson at a convenience store approximately one to two months prior to the shooting. Graves stated:

> [Stimpson] was talking about how the economy was and how he couldn't make no money. And then he said the only way he could make money is by being a hit man or whacking somebody or working for the mob or something like that and then busted out laughing.

(R. 456-57.) Graves was also interviewed by the police during the investigation into Gilbert's shooting. In that interview, a transcript of which was admitted into evidence, Graves stated:

> Tom [Stimpson] was down there at the Citgo. I come walking out, and I was talking to him about doing some dozer work for us. And he said, you need to make any extra money, you know. And I said, I'm always up for money, Tom, what do you need? He said, I need somebody whacked - no. I know somebody that needs to be whacked, and I'll give you $15,000 to do it. And I busted out laughing, and he grinned at me. And that's all that was to it.

Graves also testified that he saw Stimpson talking to [the shooter] on several occasions in the months prior to Gilbert's shooting.

8

(Doc. 8-10, pp. 2-7) (some citations and quotation marks omitted).  Because the State of Alabama introduced several pieces of corroborating evidence that connects Mr. Stimpson with the attempted murder of Ms. Gilbert, none of which concerns the medical or ballistics evidence on which Mr. Stimpson relies, the State's evidence undermines Mr. Stimpson's ability to establish that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  Consequently, Mr. Stimpson is not entitled to equitable tolling on the basis of actual innocence.

Having reviewed and considered the materials in the Court's electronic record, including the report and recommendation and Mr. Stimpson's objections, the Court adopts the report of the magistrate judge and accepts his recommendation. Pursuant to 28 U.S.C. § 2244(d)(1)(A), the Court will dismiss this habeas proceeding with prejudice because it is untimely.  Consequently, Mr. Stimpson's motion to amend his habeas petition (Doc. 12) is moot.

A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted).  The

9

Court finds Mr. Stimpson's claims do not satisfy either standard.  If Mr. Stimpson wishes to appeal, he must request a certificate of appealability from the Eleventh Circuit Court of Appeals.

The court will enter a separate final judgment.

**DONE** and **ORDERED** this March 25, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE